Filed 8/20/24  In re Z.W. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Z.W., a Person Coming Under the Juvenile Court Law. | B331642 |
| | (Los Angeles County Super. Ct. No. 23CCJP01404A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ROBERT W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hernan D. Vera, Judge.  Conditionally affirmed and remanded with directions.

Suzanne M. Nicholson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

––––––––––––––––––––

**INTRODUCTION**

Robert W., the father of Z.W. (born 2021), appeals from the juvenile court's jurisdiction findings and disposition orders.[1] However, the only claim of error Robert advances in his opening brief is that the juvenile court failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law. The Los Angeles County Department of Children and Family Services (Department) concedes the alleged ICWA errors, and it requests we conditionally affirm and remand for ICWA compliance. Accordingly, we conditionally affirm the juvenile court's orders and remand for full compliance with ICWA's inquiry and notice provisions.

––––––––––––––––––––

[1] Although Robert's opening brief states that he "appeals from a disposition order (including jurisdictional findings)," he presents no argument the jurisdiction findings should be reversed.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Referral, Dependency Petition, and Detention*

In April 2023, the Department received a referral alleging neglect of Z.W., then 21 months old, based on alleged incidents of violence between Z.W.'s mother S.R. and the maternal grandmother.  When interviewed, Robert reported S.R. had a "'bad drinking problem,'" he and S.R. were no longer in a relationship, and he had not lived in the home for over a year.  The family had three prior referrals, including domestic violence between Robert and S.R., and S.R.'s 2022 conviction for driving under the influence with Z.W. in the vehicle.  S.R. denied the alleged domestic violence and stated Robert assaulted her just once in February 2022.  Z.W. was detained and placed with paternal aunt April W.

On April 26, 2023, the Department filed a dependency petition on behalf of Z.W., alleging under Welfare and Institutions Code section 300, subdivisions (a) and (b), a history of domestic violence of S.R. by Robert in Z.W.'s presence, S.R.'s failure to protect Z.W. by allowing Robert unlimited access to him, and a history of domestic violence of the maternal grandmother by S.R. in Z.W.'s presence.[2]  The petition further alleged S.R. had a history of substance abuse and was a current abuser of alcohol, which rendered her unable to care for Z.W., and that Robert failed to protect Z.W. by allowing him to live in S.R.'s home.  The petition also alleged the parents possessed a loaded

---

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

3

pistol, ammunition, and a bag of marijuana in the home within access of Z.W.

The Department included in its petition an ICWA-010 form indicating it had reason to believe Z.W. is or may be an Indian child, with reported Choctaw and Creek ancestry. April, Robert's sister, reported that she and Robert had Choctaw and Creek ancestry on the maternal side of their family, and that their maternal grandmother was born on the reservation but the family was not registered with the tribe. Robert also reported his family had Native American ancestry and filed an ICWA-020 indicating Choctaw ancestry. S.R. and the maternal grandmother reported no known Indian ancestry.

At the detention hearing on April 28, Robert told the court his late maternal grandmother was 90 percent Choctaw, he believed his late maternal grandfather was also a tribal member, and his great grandmother was born on a reservation in Oklahoma. He stated his grandmother was also born or lived on the reservation and that April and his maternal aunt Velma D. would have more information. The court found ICWA did not apply to the maternal side of Z.W.'s family, but that on the paternal side it had reason to know he may be an Indian child "or at least that notice requirements have been triggered." The court ordered the Department to notice the Bureau of Indian Affairs (BIA) and relevant tribe(s), with copies of the notices, return receipts, and any correspondence received to be submitted to the court for the next court date. It also ordered the Department to make further inquiry of extended family members, specifically paternal aunt April and paternal great aunt Velma.

The juvenile court ordered Z.W. detained with April, with reunification services and monitored visitation to the parents.

B.      *The Jurisdiction and Disposition Report and Hearing*

In its combined jurisdiction and disposition report, filed on May 23, 2023, the Department reported as to ICWA status that it spoke with Robert on May 16.  Robert stated his mother was deceased, but he would gather as much information as possible in terms of family members' names, dates of birth, and dates of death, and would forward that information to the Department.  The Department reported that it would send out ICWA-030 notices when it received that information from Robert.  No further inquiry of paternal aunt April or paternal great aunt Velma is reflected in the report, nor is there any indication the Department ever inquired of paternal great aunt Carolyn S., who was identified in its detention report.

The report also contains no indication any inquiry was made of maternal relatives.  S.R. lived with various relatives until the age of eight, but there is no indication the Department ever attempted to identify or interview these relatives.  She reported her father, Z.W.'s maternal grandfather, passed away in 2019.  The Department interviewed a maternal aunt early in the case, but did not inquire into any possible Native American ancestry.

The juvenile court held a combined jurisdiction and disposition hearing on June 8, 2023.  The court did not address ICWA and made no ICWA findings at the hearing.

The juvenile court dismissed the section 300, subdivision (a), count and sustained the subdivision (b) count alleging domestic violence between S.R. and Robert, and S.R.'s failure to protect.  It also sustained the subdivision (b) count alleging S.R.'s substance abuse but struck the portion alleging Robert's failure to protect.  It dismissed the counts alleging

5

domestic violence between S.R. and the maternal grandmother, and the parents' possession of a gun, ammunition, and marijuana within reach of Z.W.

The court found Z.W. to be a person described by section 300, subdivision (b), and ordered him removed from both parents with reunification services and continued monitored visitation. The court ordered S.R. to complete a full drug and alcohol program, a domestic violence program for victims, and individual counseling. The court ordered Robert to complete a 52-week domestic violence for batterers program and individual counseling.

Robert timely appealed.

## DISCUSSION

A. *Conditional Affirmance and Remand for ICWA Compliance is Necessary*

1. *ICWA and the duty of inquiry*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq.) set minimum federal standards a state court must follow before removing Indian children from family and placing them in foster care or adoptive homes. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 551; accord, *In re T.G.* (2020) 58 Cal.App.5th 275, 287; 25 U.S.C. § 1902.) The statute "authorizes states to provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA." (*In re T.G.,* at p. 288; see 25 U.S.C. § 1921.) ICWA permits tribes to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding. (See 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8.)

To ensure Indian tribes can exercise their rights in dependency proceedings, an investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided to the relevant tribes. (See § 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"].) "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W., supra,* 70 Cal.App.5th at p. 552; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

The duty to inquire "'begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.'" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; see § 224.2, subds. (a)-(c).) The duty of inquiry also extends to the juvenile court, which is required to "ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c); see 25 C.F.R. § 23.107(a); *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.)

The Department's initial duty of "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b); see Cal. Rules of Court, rule 5.481(a)(1); *In re Y.W., supra,* 70 Cal.App.5th at pp. 551-552.) ICWA and state law define "extended family member," if not separately defined by the

7

law or custom of the Indian child's tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c).)

If the juvenile court or the Department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child" (§ 224.2, subd. (e); Cal. Rules of Court, rule 5.481(a)(4); *In re Y.W., supra,* 70 Cal.App.5th at p. 552), further inquiry requires interviewing, "as soon as practicable," extended family members, contacting the BIA, and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(C)); see Cal. Rules of Court, rule 5.481(a)(4).)

If the further inquiry "results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; see 25 U.S.C. § 1912(a); § 224.3, subd. (a) [notice under ICWA "shall be provided" if the court, social worker, or probation officer "knows or has reason to know . . . that an Indian child is involved"].)

2. *Remand for ICWA compliance is required*

Robert asserts, the Department concedes, and we agree that remand is necessary because (1) the Department did not ask identified extended family members whether Z.W. is or may be an Indian child; (2) the Department failed to send ICWA notices as ordered by the juvenile court; (3) the juvenile court failed to

8

ensure the Department used due diligence to determine whether Z.W. was an Indian child; and (4) the juvenile court did not treat Z.W. as an Indian child despite finding there was reason to know the child was an Indian child at the detention hearing.

Here, extended paternal family members likely to have meaningful information about Z.W.'s ancestry were not asked about Indian ancestry, including paternal aunt April, paternal great aunt Velma, and paternal great aunt Carolyn. The Department also failed to conduct an initial inquiry of available maternal relatives. "In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child." (*In re Antonio R., supra,* 76 Cal.App.5th at p. 435.) Accordingly, the order is conditionally affirmed and the matter remanded so that the Department can comply with its duties under ICWA to identify and make all reasonable efforts to interview available extended maternal and paternal relatives, including interviewing April, Velma, and Carolyn, regarding whether Z.W. has any Indian ancestry. (See *In re Rylei S., supra,* 81 Cal.App.5th at pp. 324-327; *In re Antonio R.,* at pp. 435-437; *In re Y.W., supra,* 70 Cal.App.5th at pp. 556-559.)

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are conditionally affirmed. We remand the matter for the juvenile court to direct the Department to conduct a meaningful ICWA inquiry and ensure full compliance with the inquiry and notice provisions of ICWA and related California law including

9

but not limited to making all reasonable efforts to attempt to identify and thereafter interview available maternal and paternal relatives and others who have an interest in Z.W. and would reasonably have knowledge about the family's Indian ancestry, including interviewing paternal aunt April, paternal great aunt Velma, and paternal great aunt Carolyn about the possibility of Z.W.'s Indian ancestry.  The Department shall submit a report of its interviews or efforts to conduct interviews to the juvenile court.

The juvenile court shall then determine whether the ICWA inquiry and notice requirements have been satisfied and whether Z.W. is an Indian child.  If, after proper inquiry and notice, the court finds Z.W. is an Indian child, it shall conduct a new disposition hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If not, the court's original orders will remain in effect.


                              MARTINEZ, P. J.


We concur:



        FEUER, J.



        STONE, J.